UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RAYMOND PARKER, AS PERSONAL REPRESENTATIVE FOR THE ESTATE OF ARON CHRISTENSEN and ITS BENEFICIARIES;<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL R. ASBACH, an individual; and ETHAN ASBACH, an individual,<br><br>Defendants. | Civil Action No.<br><br>**COMPLAINT FOR WRONGFUL DEATH, NEGLIGENCE, BATTERY, CONVERSION, AND STRICT LIABILITY FOR ENGAGING IN AN ABNORMALLY DANGEROUS ACTIVITY**<br><br>**REQUEST FOR JURY TRIAL** |

Plaintiffs, by their undersigned attorneys, allege as follows:

## I. INTRODUCTION

1.1   On or about August 19, 2022, Aron Lars Christensen ("Aron") was killed by gunfire while hiking with his four-month old blue heeler puppy, Buzzo, on the Walupt Lake Trail in the Gifford Pinchot National Forest, located in Lewis County, Washington. During the events in question, Buzzo was also killed.

1.2   Within 48 hours of the killings, defendants Lewis County Sheriff's Office ("LCSO") and the Lewis County Coroner's Office ("LCCO") knew that defendant Ethan Asbach ("Ethan") was the shooter and that as a 19-year-old, Ethan was unlawfully carrying a firearm that Ethan's father, defendant Michael Asbach ("Michael") unlawfully gave and entrusted to him.
COMPLAINT - 1

1.3     Despite the Asbachs' admissions, in April 2023, Lewis County Prosecutor, Jonathan Meyer ("Meyer"), refused to prosecute the Asbachs for Aron's and Buzzo's deaths. In support of his decision, Meyer cited law enforcement negligence and efforts to push a false narrative that Aron died by heart attack. Given Lewis County's utter abdication of its law enforcement responsibilities and refusal to hold the Asbachs to account for Aron's and Buzzo's deaths, plaintiffs have no choice but to bring this lawsuit.

## II. THE PARTIES

2.1     Plaintiff Raymond Parker ("Raymond") is the personal representative for the Estate of Aron Christensen. Aron's beneficiaries are Aron's mother, Martha Christensen ("Martha"), father, Richard Christensen ("Richard"), sister, Natalie Parker ("Natalie"), and brother, Corey Christensen ("Corey"). *See* RCW 4.20.010 and 4.20.020.

2.2     Defendant Michael Asbach ("Michael") is the father of Defendant Ethan Asbach ("Ethan"). Both Ethan and Michael are residents of Thurston County, Washington.

## III. JURISDICTION AND VENUE

3.1     This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Plaintiffs are residents of the state of Oregon. Defendants are each residents of the state of Washington, and the amount in controversy exceeds the sum of $75,000.

3.2     Venue is proper in this District and Division because the events at issue occurred in Lewis County, Washington, and some of the defendants reside in Thurston County, Washington.

## IV. NATURE OF ACTION

4.1     As the personal representative for Aron's Estate, Raymond, on behalf of Aron's beneficiaries, brings this suit against the Asbachs for Aron's wrongful death, negligence, battery, negligent infliction of emotional distress, outrage, and damage to property pursuant to RCW 4.20.046, RCW 4.20.010, and 4.20.020.

## V. STATEMENT OF FACTS

**Aron and Buzzo Travel With Friends to Walupt Lake Campground**

5.1     In August 2022, Aron was a 49-year-old musician residing in Portland, Oregon. He

COMPLAINT - 2

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

had also recently landed his dream job working at a record reproduction company, Cascade Record Pressing. Although unmarried, Aron's life was full and happy. Aron was loved by his friends, many of whom referred to him as their "Rock," his parents Richard and Martha, his siblings Corey and Natalie, and his brother-in-law, Raymond. And, recently, Aron had adopted a blue heeler puppy named "Buzzo."

5.2 In August 2022, Aron, and then-four month old Buzzo, and several of Aron's friends, planned an annual camping trip together. This year's destination was the Walupt Lake Campground, located in the Gifford Pinchot National Forest, in Lewis County, Washington. Everyone was excited and joyful about the trip in the aftermath of the COVID-19 pandemic. Aron was particularly excited to share outdoor time with Buzzo.

5.3 On Thursday, August 18, 2022, Aron with Buzzo in tow, drove to Walupt Lake with his dear friend, Ezra Meredith ("Ezra"). Upon arrival at the campground, Aron, Buzzo, and Ezra joined Ezra's wife and children and several others for the weekend.

5.4 On the evening of August 18, 2022, Aron and Buzzo stayed with their group at the Walupt Lake Campground. On the morning of Friday, August 19, 2022, however, Aron told Ezra that he and Buzzo were going to do a 13-mile "bonding" hike together, and they would be back the next day in time to help prepare dinner for the group. An avid outdoorsman since his childhood, Aron was ecstatic to spend this time with Buzzo in such a beautiful part of Washington State.

5.5 Aron and Buzzo set off on their bonding hike, traveling along Walupt Lake trail due east. Aron and Buzzo hiked several miles that day out to some mountain lakes, but then opted to turn back. Rather than go directly back to the campground, it appears, based on location data, Aron and Buzzo pulled off the main trail into an opening to rest and relax for the rest of the day. Their exact movements that day cannot be fully defined, given Aron's unavailability as a witness.

**Michael Travels to Walupt Lake Campground and Then to Sheep Lake**

5.6 Michael was also camping near Walupt Lake that weekend of August 19 through 21, 2022. On Friday, August 19, 2022, at or about 11:30 a.m., Michael arrived at Walupt Lake Campground. Michael did not stay in the campground, nor did he take the Walupt Lake Trail.

COMPLAINT - 3

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

Instead, Michael and his friends took a trail, known as the Nannie Ridge Trail, forking to the left and north of the Walupt Lake Trail that had its head close to the campground. Michael and his party headed due north along the Nannie Ridge Trail to a higher elevation lake, known as Sheep Lake, where Michael planned to camp through Sunday, August 21, 2022. The purpose of the trip was purportedly bear hunting.

5.7 Michael's son, Ethan, purportedly planned to join Michael's camping party that weekend. Ethan wanted his girlfriend, KAB[1], to come too. But, KAB could not join Ethan until she finished work in the afternoon of Friday, August 19, 2022.

5.8 Ethan and KAB therefore planned to drive up to Walupt Lake late afternoon on August 19, 2022, and then hike up to Sheep Lake that evening or the next morning.

5.9 When making arrangements with Ethan about meeting up, Michael gave Ethan directions to get to Sheep Lake via Nannie Ridge. Michael also instructed Ethan to pack Michael's Taurus 9mm handgun for the trip, which Ethan did. Ethan was told to retrieve the gun from Michael's truck at the Asbach home. Priming the pump for disaster, Michael specifically entrusted Ethan with the gun, and concurrently told Ethan to bring the gun for protection against wild animals in the area.

5.10 On August 19, 2022, Ethan was only 19 years old and, therefore, was prohibited from carrying a handgun in the Gifford Pinchot National forest, pursuant to RCW 9.41.240(2). Indeed, Ethan's simple act of taking the gun off of the premises of the Asbach home and carrying the gun into the Gifford Pinchot National Forest constituted a misdemeanor.

5.11 Both Ethan and Michael purport to be experienced gunowners and, therefore, neither of them should have disregarded the law and basic rules of firearm safety.

---

[1] KAB was a minor at the time and, therefore, only her initials are disclosed in this pleading.

COMPLAINT - 4

720206.0001/9850605.1

### Ethan and KAB Arrive at Walupt Lake Campground and Flee the Next Day

5.12  Ethan and KAB arrived at the Walupt Lake Campground in the evening of August 19, 2022. Rather than stay at the Walupt Lake Campground that evening, they decided to hike to Sheep Lake, and set off to do so. Ethan and KAB, however, missed the crucial left turn up Nannie Ridge and, instead, continued down Walupt Lake Trail.

5.13  According to Ethan, about 90 or 100 minutes into the hike, he and KAB heard growling. Allegedly fearing a wild animal attack, Ethan claims to have slowly maneuvered to grab the gun and magazine out of his pack. Ethan claims that he yelled at the animal to go away, but it would not comply. Thereafter, as soon as his headlamp illuminated the animal's eyes, purportedly about 15-20 feet away, Ethan claimed he fired one shot striking the animal. Ethan claims the animal died in 30 seconds or less.

5.14  Upon investigating what he shot, Ethan purportedly saw a dead human body that was "blue" and turned out to be Aron and his dead puppy—Buzzo.

5.15  Ethan admitted to seeing a bullet hole in Aron's body, but claimed that he only fired one shot and the bullet must have gone through Buzzo and into Aron's body.

5.16  Ethan claimed that he and KAB started hiking again between 11:40 p.m. and 12:15 a.m.

5.17  Ethan claimed that he and KAB returned to Walupt Lake Campground to try to find his dad, and then ended up getting lost on the Pacific Crest Trail, where they eventually camped for the night.

5.18  At no time did Ethan or KAB seek help from other campers or hikers, despite hundreds of people being close by at Walupt Lake Campground, mere feet across a paved parking lot from the trailhead.

5.19  At no time did Ethan or KAB try to call 911.

5.20  At no time did Ethan or KAB try to revive Aron.

5.21  Ethan admitted to law enforcement that he believed he killed Aron, but he was afraid that he, his dad, and KAB were going to be in trouble. So from the time of the shooting and

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

all the next day when they claim to have floundered, lost in the woods for several hours, Ethan and KAB eventually hiked out past numerous campers and hikers at the Walupt Campground to their vehicle. During this time, Ethan and KAB did not say a word to any of the numerous people around them who could have helped Aron. Instead, Ethan and KAB fled back to Tenino (a three-hour drive) to wait for Michael to return from camping.

<strong>LCSO Is Dispatched to the Walupt Lake Area After Receiving News<br>of Aron's and Buzzo's Deaths and Aron's Gunshot Wound</strong>

5.22 On or about August 20, 2022, around 2 p.m. in the afternoon, hikers discovered Aron's and Buzzo's remains and observed an obvious gunshot wound in Aron's abdomen. These campers immediately reported their discovery to the Walupt Lake campground hosts, who in turn reported the incident to 911, via a SOS call at 4:04 p.m.

5.23 LCSO's Deputy Andrew Scrivner ("Scrivner"), acting in the course and scope of his employment at all times, was the first LCSO official to arrive at Walupt Lake. Scrivner was advised by witnesses that Aron had a gunshot wound in his abdomen.

5.24 LCSO had recently demoted Scrivner from detective to deputy for inappropriate conduct. But even as a deputy, Scrivner knew that one of his essential job functions was to preserve crime scenes. He also knew from his training that he was obligated to treat every death as a homicide until homicide could be ruled out.

5.25 Upon his arrival, Scrivner learned that Aron and Buzzo were not located right at the campground. Scrivner thereafter advised LCSO that he intended to "pack" them out. LCSO responded over dispatch lines and ordered Scrivner not to move the body, if there was anything suspicious. Scrivner took it upon himself to go to the scene where Aron and Buzzo were located.

5.26 Instead of following orders, however, when Scrivner arrived at the scene where Aron and Buzzo were located, Scrivner unilaterally and absurdly decided that Aron's and Buzzo's deaths were not suspicious. Even though Scrivner could not explain Buzzo's death, Scrivner advised his superiors that Aron had only suffered a "puncture wound." Scrivner then advised his superiors that he was going to enlist volunteers to transport Aron, Buzzo, and their belongings

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

back to Walupt Lake campground, and did so promptly using a tarp, paracord, and other items pulled from Aron's hiking pack at the scene. Aron's own paracord was used to bind his hands and feet together. Buzzo was placed on Aron's chest, the two bodies were then wrapped in a tarp, and the bodies were packed out, instead of a proper investigation and removal taking place.

5.27 As a direct consequence of Scrivner's blatant disregard of orders, his training, his job duties, and common sense:

- Detectives and Deputy Coroner Susan Anderson, who were enroute and qualified to investigate the scene, were called off;
- The crime scene was destroyed;
- Key forensic analysis was not conducted; and
- Evidence on Aron, Buzzo, and their belongings were exposed to cross-contamination.

**LCCO and LCSO Knew Scrivner Disregarded His Job Duties, Orders, and Training, but Instead of Disciplining Him, They Knowingly Adopted Scrivner's Narrative to Hide His Misconduct From Aron's Family and the Public**

5.28 LCCO knew that Scrivner had disregarded his law enforcement duties by failing to secure the crime scene and treating Aron's and Buzzo's deaths as "nonsuspicious." In fact, upon taking possession of Aron and Buzzo, LCCO immediately ordered an autopsy of Aron because it knew his death, coupled with an unexplained death of a four-month old puppy, involved "suspicious circumstances." LCCO also immediately ordered x-rays of Aron's and Buzzo's bodies.

5.29 Even though LCCO knew Scrivner had violated his duties and believed the death was "suspicious," LCCO adopted Scrivner's narrative when talking to Aron's family, in order to cover up his misconduct. On August 21, 2022, LCCO Deputy Coroner Susan Anderson spoke with Aron's brother, Corey. During that conversation, Deputy Coroner Anderson expressly assured Corey that there was "no evidence of foul play," that Aron had a small wound near his rib, but there were "no signs of trauma," and his death "did not seem to be suspicious," but rather Aron suffered from "a medical event" while hiking. She advised that she would know more once the autopsy was completed.

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

5.30    On this same day, Michael and Ethan contacted LCSO to confess that Ethan had shot Aron and Michael gave Ethan the gun.  And later that day, x-rays of Aron's body confirmed that a bullet was lodged in his chest cavity.  Despite this information, no one contacted the Christensen family to let them know that Aron in fact had been shot.

5.31    On August 26, 2022, pathologist Megan Quinn, M.D. conducted an autopsy. During the autopsy, Dr. Quinn, in the presence of LCSO Deputy Brown, noted that Aron had experienced a heart attack at some undetermined time.  Deputy Brown immediately asked her if he could report to his superiors that Aron died from a heart attack.  Dr. Quinn advised him that he could not do so because Aron also had a bullet in him and she needed to conduct further tests relating to his gunshot wound.  On October 26, 2022, Dr. Quinn advised LCCO that Aron died from a gunshot wound, the manner of death was homicide, and her autopsy report was forthcoming in November 2022.  In March 2023, Dr. Quinn would later tell Prosecutor Meyer that she felt pressure from LCSO to adopt a narrative—specifically, that Aron died from a heart attack.

5.32    On August 29, 2022, LCCO called Aron's family to advise that the autopsy revealed that Aron "had a bullet in him."  This news was a complete shock to Corey, who had previously been told that Aron's death was not suspicious and resulted from a medical event. Corey then attempted to call LCCO eight times from 12:30 to 5 p.m.  No one answered the phone, causing great emotional distress and anxiety to Corey.

5.33    On August 30, 2022, LCCO Chief Deputy Coroner Dana Tucker ("CDC Tucker") contacted Corey to confirm that Aron had a bullet in him, but that she did not think Aron died from the bullet, because he had a "widow-maker heart attack."  The information provided by CDC Tucker did not provide any comfort to Corey; in fact, it caused even more distress, because Corey began to suspect he was being given a false narrative.

5.34    On August 31, 2022, LCCO released Aron's remains to the family without telling them that cremation would eliminate any possibility of reexamining Aron's remains in the future. Aron was thereafter cremated.

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

5.35     On August 29, 2022, LCCO asked a local veterinarian, Dr. Brandy Fay, to conduct a necropsy of Buzzo.  On August 30, 2022, Dr. Fay did so and reported finding two small, side-by-side wounds in Buzzo's "left axillary region," and that these two wounds did not connect. Dr. Fay determined that Buzzo was likely stabbed and died immediately.

5.36     On September 7, 2022, despite the information from Dr. Fay, and despite the fact that the pathologist's autopsy report was still pending and key laboratory tests had not been returned, CDC Tucker again told Corey that Aron did not die from the bullet wound, but instead Aron died from a widow-maker heart attack.  CDC Tucker also advised Corey that a hiker, whom she described as a "witness," had admitted to shooting Aron, while mistaking Buzzo for a wild animal.  She reported that the "witness" hiker believed the bullet went through Buzzo and into Aron.  During this conversation, CDC Tucker did not advise Corey that Dr. Fay concluded Buzzo had been stabbed.  The information that CDC Tucker provided to Corey was shocking and devastating to Corey—it contradicted Deputy Coroner Anderson's information and prior information provided by CDC Tucker on August 30, 2022.  All Corey wanted to know was the truth about how his brother died.

5.37     On September 9, 2022, LCCO Detective James McGinty spoke with Corey. Detective McGinty also advised that he did not believe the bullet caused Aron's death, but instead he suggested that Aron may have died from "laced marijuana or psychedelic mushrooms" found on his person.  Detective McGinty also advised that he thought Ethan was a "good kid from a good family" and had no malicious intent—even though Ethan abandoned Aron in the woods for 48 hours and failed to get any help.

5.38     A few days later, LCSO Detective Alan Stull would also tell Corey that he believed Aron died from taking psychedelic mushrooms or smoking bad pot.  Both McGinty and Stull asked Aron's family not to discuss the case with media or anyone else while they continued to investigate.

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

5.39   Corey's conversations with McGinty, Stull, Tavener, and Anderson caused him great emotional distress, anxiety, and frustration.  He felt that the police and coroner were trying to convince him that Aron's and Buzzo's deaths were natural—when common sense revealed that the deaths were anything but.  Corey wanted to go to the press immediately to make sure that Aron's and Buzzo's deaths were properly investigated and anyone responsible for their deaths would be held to account.  Corey's concerns caused enormous tension between him and his sister Natalie and brother-in-law Raymond.  Trusting the process, Raymond and Natalie understandably wanted to believed law enforcement would mete out justice, and encouraged Corey to wait for Lewis County to complete its investigation.  Despite the tensions created by LCCO and LCSO's misinformation to Corey, he relented to preserve peace with family.

5.40   Ultimately, Corey's suspicions about Lewis County law enforcement were correct. Despite Detectives McGinty's and Stull's suppositions that Aron died from illegal drugs, toxicology reports later confirmed that Aron did not die from any kind of drug overdose.  In fact, in November 2022, Dr. Quinn issued her formal conclusions that Aron died by homicide after being shot.

5.41   In December 2023, LCSO retained another Doctor of Veterinary Medicine to examine Buzzo.  This doctor—Dr. Otteman— purportedly discovered a second wound on Buzzo and determined Buzzo's cause of death aligned with being shot.

5.42   On or about April 13, 2023, the Lewis County Prosecutor announced that he would not prosecute any claims against Ethan or Michael.  This news was utterly devastating to Aron's family and friends.

5.43   On or about April 19, 2023, the Lewis County Sheriff's Office released Buzzo's body from evidence to the Christensen family, as the case had been declined.

5.44   On or about April 2023, Dr. Brandy Fay requested the opportunity to perform a second necropsy of Buzzo's body, and the Christensen family agreed.  A biopsy of the second wound was submitted to Marina G. Gimeno DVM, MSc, PhD, FHEA of IDEXX Labs to test if the second wound was an ante- or post-mortem occurrence.  The analysis observed, among other

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

things, that "the sections show tissue within normal histological limits without any evidence of ongoing hemorrhage…" The analysis concluded that "there is no conclusive evidence to confirm that this wound was inflicted ante-mortem (prior to the animal's death)." As Dr. Fay puts it, a dead dog does not bleed.

5.45 Corey thereafter requested Governor Inslee and Prosecutor Meyers to refer this matter to Attorney General for an independent investigation. Prosecutor Meyer and the Governor declined.

5.46 To date, the State of Washington Officials have taken no further action. Ethan and Michael walk free with impunity. In contrast, Aron's beneficiaries have been deprived of a life without Aron. They have suffered extreme emotional distress. Their lives have been wholly interrupted and forever changed. Both Natalie and Corey have incurred economic loss, loss of companionship, emotional distress, and severe pain and suffering.

5.47 Likewise, Aron's Estate has suffered horribly as a result of this senseless act. Aron suffered severe pain and suffering before his death, and before he died, watched his puppy die in the woods alone and abandoned. Aron has been deprived of a joyful life with his family and friends, economic earnings, other job benefits to be shared with familial members, incurred economic loss, loss of companionship, emotional distress, and severe pain and suffering.

## VI. <u>FIRST CLAIM FOR RELIEF</u>

**(Negligent Entrustment and Wrongful Death Against Defendant Michael Asbach)**

**RCW 4.20.010; RCW 4.20.046**

6.1 Plaintiffs repeat and realleges all of the foregoing allegations set forth in Sections I through V, above.

6.2 The Asbachs pride themselves as experienced and knowledgeable gunowners, who are merely exercising their constitutional right to own guns. But Defendants know the right to bear arms is not unfettered, and that they must act with due care with their firearms at all times.

6.3 Michael knew or should have known that his son, Ethan, who was only 19 years old, was prohibited from carrying a pistol into the Gifford Pinchot Wilderness area.

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

6.4     Michael had a duty to keep his firearm secure and safe while not in his personal possession; to not entrust it to a person prohibited by law from having that gun; and to not inflame the fears of that prohibited person when they were to carry the gun on a heavily trafficked public trail during the peak of camping season at Walupt Lake.

6.5     Michael disregarded his duties when he instructed Ethan to pack his pistol and ammunition in his backpack for the camping trip "for protection against wild animals."

6.6     But for Michael's negligent conduct in entrusting his firearm to Ethan, Aron and Buzzo would never have been shot and killed.

6.7     As a direct and proximate cause of Michael's negligence, Aron (and Buzzo) are now dead, and Plaintiffs are permanently deprived of Aron's companionship and economic contributions to the family.  In addition, Plaintiffs have suffered extreme emotional distress and economic loss as a consequence of needlessly losing Aron.

## VII.  SECOND CLAIM FOR RELIEF

### (Negligence and Wrongful Death Against Defendant Ethan Asbach)

### RCW 4.20.010; RCW 4.20.046

7.1     Plaintiffs repeat and reallege all of the foregoing allegations set forth in Sections I through VI, above.

7.2     As a person trained in firearms, Ethan knew or should have known that he, at 19 years old, was prohibited from carrying a pistol into the Gifford Pinchot Wilderness area; the basic rules of firearm safety and how to apply these rules under the circumstances at hand (especially when carrying at night, during the summer season when hiking trails in the area would be teeming with hikers and campers); and to wait for daybreak before attempting to hike in the wilderness because of the increased potential to interface with wild animals at night.

7.3     Ethan knowingly or negligently disregarded his duties and failed to conform his conduct to that of a reasonably prudent person under the circumstances.

COMPLAINT - 12

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

7.4 But for Ethan's conduct, Aron would never have been shot. Moreover, but for Ethan's decision to flee the scene and fail to seek help for more than 48 hours, Aron (and Buzzo) would not have died alone, suffering in the woods.

7.5 As a direct and proximate cause of Ethan's conduct, Aron (and Buzzo) are now dead, and Plaintiffs are permanently deprived of Aron's companionship and economic contributions to the family. In addition, Plaintiffs have suffered extreme emotional distress and economic loss as a consequence of needlessly losing Aron.

## VIII. THIRD CLAIM FOR RELIEF

### (Battery and Wrongful Death Against Defendant Ethan Asbach)

### RCW 4.20.010; RCW 4.20.046

8.1 Plaintiffs repeat and reallege all of the foregoing allegations set forth in Sections I through VII, above.

8.2 Alternatively, Ethan intended to cause harmful contact with Aron when he fired Michael's gun at Aron. Ethan's actions directly resulted in Aron sustaining harm and caused his death.

8.3 As a direct and proximate cause of Ethan's conduct, Aron (and Buzzo) are now dead, and Plaintiffs are permanently deprived of Aron's companionship and economic contributions to the family. In addition, Plaintiffs have suffered extreme emotional distress and economic loss as a consequence of needlessly losing Aron.

## IX. FOURTH CLAIM FOR RELIEF

### (Strict Liability for Engaging in an Abnormally Dangerous Activity Against Defendant Ethan Asbach and Wrongful Death)

### RCW 4.20.010; RCW 4.20.046

9.1 Plaintiffs repeat and reallege all of the foregoing allegations set forth in Sections I through VIII, above.

COMPLAINT - 13

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

9.2     When Ethan decided to discharge a firearm, at night, with only a dim headlamp *on* a heavily trafficked public trail in the peak of hiking season (the week before Labor Day Weekend), there existed a high degree of risk of harm to persons, land, and property of others.

9.3     There existed a high likelihood that any harm resulting from firing of a gun under these conditions would be great, risk could not be eliminated by exercising reasonable care, this activity is not commonly practiced by hikers, this activity was highly inappropriate where it occurred, and the balance of this activity's value against its dangerous attributes could not rationalize such behavior.

9.4     Ethan's conduct was the cause of Aron's death and, thus, he is strictly liable for any harm that occurred to Aron and his Estate.

## X.  **FIFTH CLAIM FOR RELIEF**

**(Conversion against Defendant Ethan Asbach)**

**RCW 4.20.046**

10.1     Plaintiffs repeat and reallege all of the foregoing allegations set forth in Sections I through IX, above.

10.2     Buzzo was Aron's best friend and property.

10.3     Per the findings and report of Dr. Fay, Ethan stabbed Buzzo twice in the left axillary region, with one stab puncturing deep into Buzzo's chest cavity, causing death.  Ethan did this to avoid firing a second gunshot.

10.4     When Ethan killed Buzzo, Aron and his estate were deprived possession of Buzzo and the enjoyment of the many years this puppy had ahead of him.

## XI.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for a judgment in favor of Plaintiffs as follows:

A.     Judgment in favor of Plaintiffs and against Ethan Asbach for wrongful death, negligence, battery, and strict liability for engaging in an abnormally dangerous activity in the amount of not less than $1,500,000;

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1

B.  Judgment in favor of Plaintiffs and against Michael Asbach for negligent entrustment and wrongful death in the amount of not less than $1,500,000; and

C.  For any other relief permitted by law, which the Court deems just and proper.

DATED: August 16, 2024

MORGAN HILL, P.C.

By: *s/ Lorenzo R. Leoni*
Lorenzo R. Leoni, WSBA No. 52659
2102 Carriage Dr. SW, Building C
Olympia, WA 98502
Telephone: 360.357.5700
lorenzo@olympialegal.com
Attorneys for Raymond Parker

LANE POWELL PC

By: *s/ Pilar C. French*
Pilar C. French, WSBA No. 33300
601 SW Second Avenue, Suite 2100
Portland, OR 97204
Telephone: 503.778.2100
frenchp@lanepowell.com
Attorneys for Beneficiary Corey Christensen

COMPLAINT - 15

Morgan Hill, P.C.
2012 Carriage Drive, Building C
Olympia, WA 98502
Tel: (360) 357-5700 Fax: (360) 357-5761

720206.0001/9850605.1